UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CHRISTOPHER L DIXON,                    )
                                        )
                    Plaintiff,          )
                                        )
        vs.                             )        No. 1:16-cv-00331-TWP-MJD
                                        )
CAROLYN W. COLVIN, Commissioner of      )
Social Security,                        )
                                        )
                    Defendant.          )

**REPORT AND RECOMMENDATION**

Plaintiff Christopher Dixon requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the

Act").[1]  *See* 42 U.S.C. § 1382c.  For the reasons set forth below, the Magistrate Judge

recommends that the District Judge **REVERSE** the decision of the Commissioner and

**REMAND** the matter for proceedings consistent with this opinion.

## I. Background

Dixon filed his application for SSI four-and-one-half years ago, in July 2012, alleging

April 28, 2006 as the onset date of disability.  [Dkt. 8-6 at 39 (R. 198).]  In his disability report

filed in conjunction with his application, Dixon listed chronic obstructive pulmonary disease,

asthma, and a learning disability as his disabling conditions.[2]  [Dkt. 8-6 at 6 (R. 165).]  Dixon's

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[2] Dixon recited the relevant factual and medical background in his opening brief.  [*See* Dkt. 10.]  The Commissioner, unless otherwise noted herein, does not dispute these facts.  [*See* Dkt. 13.]  Because these facts involve Dixon's

application was denied initially on October 10, 2012 [Dkt. 8-3 at 14 (R. 69)] and upon

reconsideration on January 22, 2013 [Dkt. 8-3 at 27 (R. 82)].  Dixon timely requested a hearing

on his application, which was held before Administrative Law Judge Ronald T. Jordan ("ALJ")

on July 10, 2014.  [Dkt. 8-2 at 35 (R. 34).]  The ALJ issued his decision on September 12, 2014,

again denying Dixon's application for DIB.  [Dkt. 8-2 at 15-29 (R. 14-28).]  On December 18,

2015 the Appeals Council denied Dixon's request to review the ALJ's decision, making it the

final decision of the Commissioner for the purposes of judicial review.  [Dkt. 8-2 at 2-4 (R. 1-

3).]  Dixon timely filed his Complaint with this Court on February 10, 2016, seeking judicial

review of the Commissioner's decision.  [Dkt. 1.]

## II.  Legal Standard

To be eligible for SSI, a claimant must have a disability pursuant to 42 U.S.C. § 1382c.

Disability is defined as the inability to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 1382c(a)(3)(A).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential

analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the

claimant does not have a "severe" impairment, or one that significantly limits his ability to

perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination

of impairments meets or medically equals any impairment appearing in the Listing of

Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is

not found to be disabled at step three and he is able to perform his past relevant work, he is not

---

sensitive and otherwise confidential medical information, the Court will incorporate by reference the factual
background the parties' briefs and articulate specific facts as needed below.

2

disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but can perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520.  Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work related activities.  S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The ALJ "need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala* 19 F.3d 329, 333 (7th Cir. 1997).  To be affirmed, the ALJ must articulate his analysis of the evidence in his decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.  The scope of review is confined to the rationale offered by the ALJ.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III.  The ALJ's Decision

In his decision, the ALJ first determined that Dixon had not engaged in substantial gainful activity since July 6, 2012.  [Dkt. 8-2 at 20 (R. 19).]  At step two, the ALJ found Dixon's severe impairments to include "asthma/chronic obstructive pulmonary disease (COPD), residuals of stabbing, borderline intellectual functioning, and anxiety/post-traumatic stress disorder (PTSD)."  [*Id.* (citation omitted)]  At step three the ALJ found that Dixon did not have an impairment or combination of impairments that meets or medically equals a listing.  [Dkt. 8-2 at 19-23 (R. 19-22).]  The ALJ addressed Listing 3.03 for asthma; the digestive listings under 5.00; and Listings 12.02, 12.05, and 12.06 for mental disorders.  [*Id.*]

Before step four, "after careful consideration of the entire record," the ALJ determined that Dixon had the RFC to perform light work with additional restrictions.  [Dkt. 8-2 at 23 (R. 22).]  Specifically, the ALJ found the following:

> [Dixon can] lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently.  He can stand and walk 6 hours in an 8 hour day and sit 6 hours.  He should not be exposed to concentrated levels of dusts, fumes, gasses, or strong odors.  He should not be exposed to unusually high levels of humidity.  He is limited to work involving simple, repetitive tasks requiring no independent judgment regarding basic work processes.  Work goals from day to day should be static and predictable.  He should have only occasional, superficial contact with coworkers and the general public.  He should learn job duties with verbal instructions.

[*Id.*]  At step four, the ALJ found that Dixon was unable to perform his past relevant work of maintenance worker and driver.  [Dkt. 8-2 at 27 (R. 26).]  After considering Dixon's age, education, work experience, and RFC, the ALJ found that Dixon could perform the jobs of grader/sorter, general laborer, and handpicker, which existed in significant numbers in the national economy.  [Dkt. 8-2 at 28 (R. 24).]  Based on these findings, the ALJ concluded that Dixon was not disabled under the Act.  [*Id.*]

### IV.  Discussion

Dixon makes several arguments as to why the ALJ's decision must be reversed, challenging the ALJ's RFC determination and step three analysis on several grounds.  The Court addresses each argument in turn.

### A.  Concentration, Persistence, or Pace

Dixon argues that the ALJ's RFC determination insufficiently accounted for the ALJ's assessment that he has moderate limitations in concentration, persistence, or pace.[3]  Dixon maintains that, rather than impose limits related to his ability to stay focused on a particular task, the ALJ only accounted for the complexity of the task.  In response, the Commissioner contends that the ALJ incorporated all limitations that were supported by the evidence.  Dixon reiterates his arguments in reply.

The RFC determination must be based upon an assessment of all relevant evidence in the record, *Young v. Barnhart*, 362 F.3d 955, 1000-01 (7th Cir. 2004), and must, "[a]s a general rule, . . . incorporate all of the claimant's limitations supported by the medical record," *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).  This means that the ALJ must explain how the record evidence supports his conclusion that the assessed RFC "is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).  Specifically, the ALJ may **not** account for restrictions in concentration, persistence, or pace merely by restricting a claimant to unskilled work because "[t]he ability to stick with a

---

[3] Dixon additionally argues that the ALJ failed to pose an appropriate hypothetical accommodating such limitations to the vocational expert at the hearing.  This argument is meritless; the ALJ specifically asked the vocational expert whether jobs exist where the claimant could be "off task from performing work-like tasks 15 percent to 20 percent of the work day."  [Dkt. 8-2 at 55 (R. 54).]  The vocational expert responded "I think—definitely, 20 percent, Your Honor, I think in these particular jobs, he would be unable to sustain himself."  [*Id.*]  The ALJ did not ultimately adopt any such restriction in Dixon's RFC, and it is this failure that Dixon properly challenges.

given task over a sustained period is not the same as the ability to learn how to do tasks of a

given complexity."[4]  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ assessed Dixon with "moderate difficulties" in concentration, persistence

or pace in his step three discussion.  [Dkt. 8-2 at 23 (R. 22).]  Later, however, the ALJ states as

follows:

> Likewise, in considering his mental impairments and his consultative mental status exams, I find the claimant has the mental capacity to understand, remember and follow simple instructions, but is restricted to work involving only occasional superficial interactions with the general public and coworkers.  Within these parameters, and in the context of performing simple and repetitive tasks, he is able to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence.  While I note a "moderate" limitation in the "paragraph B" criteria above for concentration, persistence or pace, this is based upon the record as a whole and all situations the claimant might encounter.  However, when limited as described above, his ability to function is higher.  Within these parameters, the claimant is able to sustain the attention, concentration and persistence needed to perform on a regular and continuing basis.

[Dkt. 8-2 at 26 (R. 25).]  The ALJ limited Dixon to "simple" tasks but did not include any

limitation on Dixon's "ability to stick with" such simple tasks.  *O'Connor-Spinner*, 627 F.3d at

620.

The ALJ's discussion of Dixon's limitations in concentration, persistence, or pace

(excerpted above) is perplexing.  First, with citations to Dixon's "mental status exams" and adult

intelligence testing results, the ALJ concluded that Dixon was moderately impaired in these

areas.  [Dkt. 8-2 at 23 (R. 23).]  Then, in the RFC discussion, the ALJ explained that Dixon is not

so impaired when limited to simple tasks.  But the ALJ fails to explain why or how this could be

so.  There is ample evidence that Dixon is at least moderately impaired in concentration,

persistence, or pace; for example, one state consultative examiner assessed Dixon with "marked"

---

[4] *O'Connor-Spinner* recognized that there are situations where the various conditions are so intertwined that a specific restriction to accommodate limitations in concentration, persistence, or pace is unnecessary.  627 F.3d 614, 620 (7th Cir. 2010).  The Commissioner does not argue that this is such a situation.

difficulties in these areas [Dkt. 8-3 at 6 (R. 61)] while another assessed Dixon with "moderate" difficulties [Dkt. 8-3 at 19 (R. 74)].

To the extent the ALJ elected to reject or modify these evaluations, that decision was error because the ALJ failed to point to any evidence contradicting these conclusions. Rather, it appears that the ALJ imposed his lay opinion of the medical evidence and crafted these modified limitations out of whole cloth. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("This assessment is the result of a hunch and an ALJ may not rely on a hunch."). If, however, the ALJ credited these evaluations, then the ALJ erred in failing to accommodate their conclusions in Dixon's RFC. Contrary to the Commissioner's argument, the ALJ generally may not accommodate Dixon's deficiencies in concentration, persistence, or pace by limiting the complexity of his job tasks; *O'Connor-Spinner* and *Yurt* make this much clear. The ALJ failed to support his RFC with substantial evidence because he failed to account for the demonstrated limitations in concentration, persistence, or pace—or, at a bare minimum, failed to articulate why he was rejecting the medical evidence suggesting that such limitations were required. This failure to connect the dots requires remand. *See Yurt*, 758 F.3d at 859 (reversing for failure to build a "logical bridge between the evidence of mental impairments and the hypothetical and the mental RFC" (internal quotation omitted)).

**B. Step Three Determination**

Dixon additionally maintains that the ALJ erred in not finding him disabled at step three. Dixon argues that he meets Listing 12.05 for intellectual disability, explaining that the ALJ

improperly rejected evidence without any explanation.[5]  In response, the Commissioner argues

that the ALJ amply explained his determination that Dixon does not meet Listing 12.05.  In

reply, Dixon argues that the Commissioner's explanation is an impermissible *post hoc*

rationalization, in violation of the *Chenery* doctrine.

The step-three determination of whether a listing is met or equaled is an "ultimate legal

question" left to the ALJ and which must be affirmed if supported by substantial evidence.

S.S.R. 96-6P, 1996 WL 374180; *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).  To

satisfy Listing 12.05, a claimant must satisfy the introductory "capsule" definition in addition to

one of four enumerated criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05; *Novy v. Astrue*, 497

F.3d 708 (7th Cir. 2007); *Charette v. Astrue*, 508 Fed. App'x 551, 553 (7th Cir. 2013).  As

relevant here, the enumerated paragraphs provide that a claimant may be disabled if the claimant

has certain low IQ scores.[6]  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05B-D.

However, before reaching the IQ score standards, a claimant must demonstrate

"significantly subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period . . . before age 22."  *Id.* § 12.05.  The term

"deficits in adaptive functioning," the Seventh Circuit has explained, "denotes inability to cope

with the challenges of ordinary everyday life."  *Novy*, 497 F.3d at 710.  If a claimant is able to

overcome such challenges in day-to-day living, then Listing 12.05 is unavailable, regardless of

the claimant's IQ.  *See id.*; *Charette*, 508 Fed. App'x at 553-54 ("[T]he ALJ identified the

---

[5] Dixon also criticizes the ALJ's consideration of Dixon's work history in his evaluation of Listing 12.05.  Work history, however, is an appropriate factor to consider when evaluating how well a claimant copes with the difficulties of daily life.  *See Novy v. Astrue*, 497 F.3d 708 (7th Cir. 2007); *Charette v. Astrue*, 508 Fed. App'x 551, 553 (7th Cir. 2013).

[6] Dixon has several IQ scores in the record, including his most recent WAIS IV full-scale IQ score of 57 [Dkt. 8-7 at 29 (R. 244)], which would satisfy Listing 12.05B if credited as demonstrating onset of impairment before age 22, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 ("The required level of severity for [Listing 12.05] is met when the requirements in A, B, C, or D are satisfied. . . . B. A valid verbal, performance, or full scale IQ of 59 or less . . . .").

limitations [claimant] faces, such as difficulty remembering tasks and reading, and then discussed how he overcomes them well enough to live independently, manage household chores, take care of his pets, and socialize with other people.").  As with the entirety of the ALJ's opinion, the ALJ's step three determination "must sufficiently articulate his assessment of the evidence to assure us that he considered the important evidence and to enable us to trace the path of his reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (alterations omitted).

This case is sufficiently analogous to *Hendricks v. Astrue* to require remand.  No. 1:09-cv-0378-DFH-TAB, 2009 WL 648610 (S.D. Ind. Mar. 11, 2009) (Hamilton, C.J.).  In *Hendricks*, the ALJ considered Listing 12.05 and found that "there is no evidence at all of deficits in adaptive functioning." *Id.* at *5.  The court reversed the ALJ's determination, noting that the "Listing requirement is not *no* adaptive functioning but *deficits* in adaptive functioning." *Id.* at *7 (emphasis in original).  The court cited to a doctor's mental RFC assessment and other evidence that could support the conclusion that the claimant was unable to "engage with the world," such as depending upon his spouse to complete daily tasks and frequently remaining in his room watching television. *Id.*  The court concluded:

> This evidence, if fully considered, may not be enough to satisfy Listing 12.05. . . . Here, the ALJ did not provide any reasoning on the issue because of an incorrect determination that no evidence was relevant. Without an explanation of why this evidence was discarded with regard to Listing 12.05, this court cannot affirm the ALJ's decision.

*Id.*

Here, as in *Hendricks*, the ALJ concluded that, "[i]n this case, the record fails to show **any** deficits in the claimant [sic] adaptive functioning so that he does not even meet the diagnostic description in the introductory paragraph."  [Dkt. 8-2 at 22 (R. 21) (emphasis added).] The statement that the record "fails to show any deficits" is simply untrue.  For example, as Dixon explains, Dr. Higginbotham's mental health evaluation found deficits in "self-direction,

use of community resources, and work." [Dkt. 8-7 at 30 (R. 245).]  In her third-party function

report, Dixon's wife explained that Dixon "stays around the house most of the time, [doesn't]

really like visitors, [and] stays to himself a lot." [Dkt. 8-6 at 24 (R. 183).]  At the hearing before

the ALJ, Dixon testified that some days he just lays or sits around his home because he doesn't

"feel safe" being around other people.  [Dkt. 8-2 at 47 (R. 46).]  Dixon described himself as

"very leery" and stated that he is "always looking over my shoulder" and "don't like turning my

back to people."  [Dkt. 8-2 at 52 (R. 51).]

The above certainly qualifies as evidence of difficulty in coping "with the challenges of

ordinary everyday life." *Novy*, 497 F.3d at 710.  As the Commissioner explains, the ALJ

discussed the evidence suggesting that Dixon is capable of dealing with such challenges.  But he

did so beginning from the erroneous premise that there was no evidence of deficits in adaptive

functioning.  It may be that the evidence to which the ALJ cites ultimately justifies the ALJ's

conclusion that Dixon does not satisfy Listing 12.05, but the Court may not conclude that this is

so (as the Commissioner requests) without improperly reweighing the evidence.  The ALJ must,

in the first instance, recognize the evidence of deficits in adaptive functioning for what it is and

address it on those terms under Listing 12.05.  *See Hendricks*, 2009 WL 648610.  The Court

should therefore reverse and remand the ALJ's decision for this additional reason.

### C.  Dr. Higginbotham's Opinion

Dixon next challenges the ALJ's weighing of Dr. Higginbotham's opinion, contending

that the ALJ erred in failing to discuss the weight assigned to Dr. Higginbotham.  Dr.

Higginbotham opined that Dixon has a variety of impairments with regard to verbal

comprehension, reasoning, and memory, to name a few areas.  The ALJ limited Dixon to

"simple, repetitive tasks requiring no independent judgment" with goals that are "static and

predictable." [Dkt. 8-2 at 23 (R. 22).]  Dixon fails to explain (aside from the issues discussed above regarding the ALJ's step three finding) what further limitations the ALJ should have imposed to accommodate Dr. Higginbotham's findings.  *See Schmidt v. Astrue*, 496 F.3d 833, 844-45 (7th Cir. 2007) ("The ALJ also limited Schmidt's work to jobs not involving high production goals, thus giving some credibility to Schmidt's stress claims. We therefore find substantial evidence supporting the ALJ's determination of Schmidt's mental residual functional capacity.").  Therefore, the ALJ's determination with respect to Dr. Higginbotham is supported by substantial evidence.

## D.  Literacy

Finally, Dixon challenges the ALJ's literacy finding.  Dixon notes that while the ALJ restricted Dixon to jobs where he could learn "duties with verbal instructions," nowhere does the ALJ engage in a discussion of Dixon's literacy.  [Dkt. 8-2 at 23 (R. 22).]  In response, the Commissioner argues that limiting Dixon to verbal instructions sufficiently accommodated any difficulties Dixon may have.  The Commissioner further argues that any error is harmless, since Dixon makes no argument that his limitations would preclude him from performing the jobs found appropriate by the ALJ.  In reply, Dixon argues that further literacy restrictions would restrict the jobs available to him.

The ALJ is required to consider a claimant's education and work experience, 20 C.F.R. § 404.1560(c), which includes literacy and length of education, *id.* § 404.1564(b).  As the Social Security regulations explain, "Illiteracy means the inability to read or write.  We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling."  20 C.F.R. § 404.1564(b)(1).  The Seventh Circuit has

explained that a determination of illiteracy is a "highly fact bound question"; a claimant "need only be able to read and write well enough to be able to hold simple, unskilled jobs." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) (upholding the ALJ's determination that the claimant was literate despite the fact that the ALJ did not elaborate upon this finding).

The Court agrees with the Commissioner that Dixon has failed to explain how his limitations in literacy would preclude work as grader/sorter, general laborer, or handpacker, the three jobs found appropriate by the ALJ. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("We will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same."). "Sorter," for example, requires one to sort produce on a conveyor belt and discard unacceptable product. DICOT 529.687-186, 1991 WL 674781. Dixon offers no explanation as to why limitations in literacy would exclude this job. *See Glenn*, 814 F.2d at 391 (upholding ALJ's decision where claimant could not demonstrate that his literacy was inadequate "for purposes of his job as a baker's helper"); *Treat v. Colvin*, No. 1:13-CV-0002-SEB-DML, 2014 WL 1256006, at *8 (S.D. Ind. Mar. 25, 2014) (upholding ALJ's decision where claimant did not explain how job description was incompatible with claimant's capabilities).

Nonetheless, on remand, the ALJ should actually discuss Dixon's literacy limitations, make a literacy determination, and ensure that any such limitations are incorporated in the vocational expert's hypothetical. 20 C.F.R. §§ 404.1560(c), 404.1564(b). This is particularly critical in this case because, though neither party addresses the issue, "a finding of disability is required for persons who are aged 45–49, illiterate, and limited to unskilled work." *Treat*, 2014 WL 1256006, at *7 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). Dixon was 40 years old at the

time of his alleged disability and 45 years old at the time of his SSI application. Therefore, in addition to explaining and incorporating the extent of any literacy limitations in Dixon's RFC, the ALJ on remand should expressly make the "highly fact bound" determination of whether Dixon can "read and write well enough to be able to hold simple, unskilled jobs." *Glenn*, 814 F.2d at 391.

### V.  Conclusion

For the aforementioned reasons, the Court should find that substantial evidence does not support the ALJ's determination that Dixon is not disabled. The District Judge should therefore **REVERSE** and **REMAND** the matter to the Social Security Administration for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  08 DEC 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.